NOTICE
Decision filed 03/09/23. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2023 IL App (5th) 220200

NO. 5-22-0200

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DAVI CLAXTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF THE CITY OF | ) | |
| ALTON FIREFIGHTERS' PENSION FUND, and | ) | No. 20-MR-621 |
| ROBERT FRANKE, CAMEO HOLLAND, KIRBY | ) | |
| ONTIS, GARY HEININGER, JOHN BOLLING, and | ) | |
| JOHN DAVIS, All in Their Capacities as Trustees | ) | |
| of the City of Alton Firefighters' Pension Fund, | ) | Honorable |
| | ) | Ronald J. Foster, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants, the Board of Trustees of the Alton Firefighters' Pension Fund and Robert Franke, Cameo Holland, Kirby Ontis, Gary Heininger, John Bolling, and John Davis, all in their capacities as Trustees of the City of Alton Firefighters' Pension Fund Board (collectively the Board), appeal the circuit court's order reversing the Board's order denying surviving spouse firefighter pension benefits to plaintiff, Davi Claxton. For the following reasons, we vacate the circuit court's order.

1

¶ 2                                    I. BACKGROUND

¶ 3     Gary Claxton was hired as a firefighter for the City of Alton on June 6, 1978. He married plaintiff, Davi Claxton, on July 27, 1996. Prior to the marriage, the parties entered into an antenuptial agreement in which both parties relinquished, *inter alia*, all claims to maintenance and the other party's retirement accounts or employment pensions whether "vested" or "non-vested" upon the issuance of a judgment of dissolution of marriage or legal separation. Gary retired from the fire department on December 3, 2013. Thereafter, he began receiving his retirement pension benefits from the City of Alton Firefighters' Pension Fund.

¶ 4     On April 21, 2014, Davi filed a petition for legal separation from Gary. On May 6, 2014, Gary responded by filing a counterpetition seeking dissolution of the marriage and a complaint for declaratory judgment related to the antenuptial agreement.[1]

¶ 5     That case proceeded to trial on January 26, 2017, with the circuit court first addressing the antenuptial agreement. During the hearing, Davi's counsel wanted to question Gary about his health due to medications he was taking, and such questions drew objections from Gary's counsel. Davi's counsel provided numerous reasons for the inquiry including that Davi's pension rights were tied to the marriage stating, "So when he passes away, which we all believe will be sooner than later, she will be unduly *** harmed by that because she won't have a retirement when it is time to retire." The court allowed limited inquiry and, upon completion of the testimony and review of the evidence, found the antenuptial agreement was valid and enforceable.

¶ 6     Thereafter, the court proceeded with a hearing on the dissolution of marriage. Following additional but remarkably vague testimony from Gary regarding his health problems, the parties'

---

[1]The parties' dissolution proceeding was previously appealed to this court (*Claxton v. Reeves*, 2019 IL App (5th) 170200) and we incorporate the relevant facts and findings from that decision here.

property, and claims of dissipation, Gary's attorney asked the court "in light of the evidence you heard today and the testimony and the determination on the antenuptial agreement *** to enter judgment dissolving the parties' marriage today." Davi's counsel objected stating that "given the precariousness of the health of the respondent" and the fact that the property was not yet divided "it would be detrimental to [Davi] to have a dissolution." The court deferred entry of the judgment of dissolution of marriage.

¶ 7    The proceedings continued on March 6, 2017, at which time the court addressed Davi's motion to continue. After noting the complexity of the case, Gary's health issues, multiple transfers of money, and additional accounts that were recently disclosed, the court granted a continuance until March 20, 2017, to allow Davi's counsel to review the additional information.

¶ 8    The dissolution hearing proceeded on March 20, 2017, with both parties present and resumed again on March 31, 2017. On March 31, 2017, Gary's counsel advised the court that Gary could not appear because he was hospitalized. Davi objected to proceeding in Gary's absence, but the court elected to proceed. Following the completion of testimony, and the court's request for written proposed orders, Gary's attorney renewed his earlier request for a judgment of dissolution. The court made inquiries regarding Gary's health. Gary's attorney stated that Gary was hospitalized and waiting for a liver transplant. Davi disagreed that Gary needed a transplant but agreed he had "significant health issues." Thereafter, the court found, based on Gary's "serious medical condition," that "appropriate circumstances" existed to warrant a bifurcated judgment and entered a judgment of dissolution, reserving the other issues pursuant to section 401 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/401 (West 2016)).

¶ 9    On April 24, 2017, Gary's attorney filed a suggestion of death stating Gary died on April 23, 2017. Two days later, Davi filed a motion to vacate the judgment of dissolution. In a docket

entry dated May 2, 2017, the circuit court denied the motion to vacate, and Davi appealed on May 26, 2017. On June 2, 2017, following the trial court's order disposing of the marital estate, Gary's attorney cross-appealed the property disposition on behalf of the executor of Gary's estate, James Pepper. During the appeal, the estate filed a motion to withdraw the cross-appeal and a separate response to Davi's brief that concurred with and adopted the position taken by Davi in her opening brief. Our decision was issued May 29, 2019. Given the parties' positions, as well as the lack of information regarding Gary's health, this court found the trial court's bifurcation was an abuse of discretion and reversed the judgment of dissolution in the May 29, 2019, decision. *Claxton v. Reeves*, 2019 IL App (5th) 170200.

¶ 10      While the dissolution case was pending on appeal, Davi's counsel sent correspondence to the Board dated November 15, 2017. The correspondence advised of the judgment of dissolution issued by the circuit court prior to Gary's death, the pending appeal regarding the judgment of dissolution, and that Davi and Gary's estate reached a tentative settlement that would allow Davi to be classified as a surviving spouse and entitled to pension benefits. The correspondence ended by asking the Board if it was necessary to issue a third-party claim. The Board's November 23, 2017, response stated, the Board, "upon receipt of any correspondence and/or documentation in this matter, shall act accordingly given Article 1 and Article 4 of the Illinois Pension Code as well as any relevant case law."

¶ 11      On March 29, 2018, Davi's counsel sent correspondence to the Board enclosing a copy of the memorandum of settlement (MOS) executed by Davi and the estate's representative, Mr. Pepper. The correspondence stated the document would be filed with the court and therefore Davi "shall be deemed the surviving spouse of the decedent, Gary Claxton." The correspondence also

4

asked how Davi would begin the process of receiving the surviving spouse benefit and any accrued benefits from the time of Gary's death.

¶ 12    The MOS declared the antenuptial agreement null and void, vacated the judgment of dissolution, restored the marriage, and deemed Davi the surviving spouse of Gary; however, the MOS was contingent on the Board's approval of Davi's designation as Gary's surviving spouse and her receipt of the pension benefits. The agreement further stated that if the Board denied Davi pension benefits, Davi "shall be granted the right to join the Pension Board in this action instanter." The remainder of the agreement provided for the disposition of the marital property. Gary's estate would receive two pieces of real property along with approximately $340,000, of which approximately $200,000 would be paid within two months of Davi receiving her pension benefits, a motorcycle, a truck, a 46-foot cabin cruiser yacht, and Gary's personal property. Davi would receive the remainder of the marital property, the ATM business, all the life insurance proceeds, a car, and her personal property.

¶ 13    On April 9, 2018, the Board sent correspondence to Davi's attorney denying the requested pension benefits and classifying the settlement as "illegal, *void ab initio*, and repugnant to public policy." On June 12, 2018, the Board issued notice setting Davi's application for benefits for a public hearing on July 25, 2018. On June 19, 2018, Davi obtained new counsel for the pension case who requested a continuance of the July 25, 2018, hearing. The Board suggested a rescheduled hearing date of October 24, 2018; however, in correspondence dated August 6, 2018, Davi's pension counsel suggested the parties stay the pension hearing until the appellate court issued its decision. On June 18, 2019, Davi provided the Board with a copy of our *Claxton* decision. On July 29, 2019, the Board advised Davi's counsel that Davi was not eligible for benefits pursuant to section 4-114(g) of the Illinois Pension Code (40 ILCS 5/4-114(g) (West 2016)) because the Board

5

was never made a party to the proceedings in which Davi requested the judgment of dissolution be vacated as required by that section.

¶ 14    Davi disagreed with the Board's interpretation and the claim proceeded to hearing before the Board on January 22, 2020. The evidence consisted of 29 exhibits, as well as Davi's testimony. Davi could not recall the year the divorce proceedings were initiated but agreed it was in the last few years of Gary's life. She stated that Gary was sick even before the divorce was filed and the court granted Gary's request to issue a judgment of dissolution prior to his death reserving the property issues for a later time. Davi stated that Gary's attorney did not explain why he wanted a bifurcated proceeding. She could not recall the date the order was issued but stated it was six weeks before Gary died. Davi stated the court issued the judgment over her objection. Her attorneys appealed the decision. At some point after the judgment of dissolution was granted, Gary died. She stated that the "outcome of the appeal was that [the judgment] was thrown out and reversed." It was Davi's understanding from that decision that the "effect of that reversal means that I was married to Gary Claxton the day he died." She further stated, "[O]ur divorce was completely thrown out so it was nonexistent." She knew Gary's pension check was over $5000 a month but could not recall the exact amount. When questioned by the Board, Davi stated that she could not recall whether she appealed prior to Gary's death or after but stated she appealed immediately after the ruling.

¶ 15    Thereafter, the parties provided closing argument. On April 22, 2020, the Board issued a 34-page order denying Davi's application for pension benefits after finding section 4-114(g) of the Pension Code was triggered by the circuit court's judgment of dissolution and Davi never made the Board a party to the proceedings to vacate the judgment. Davi appealed the decision to the Madison County circuit court. The circuit court issued a decision on March 2, 2022, vacating the

6

Board's denial of pension benefits, and remanded the case back to the Board with directions to issue benefits to Davi. The Board timely appealed on March 29, 2022.

¶ 16                                            II. ANALYSIS

¶ 17    On appeal, the Board argues the trial court erred by awarding Davi pension benefits as the award ignored the statutory language of section 4-114(g) of the Pension Code and requests reinstatement of its initial decision. Our review considers the agency decision, not the circuit court's decision. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 539 (2006). Whether the evidence supports a pension board's determination to grant or deny an application for a pension is a question of fact and is therefore subject to the manifest weight of the evidence standard of review. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007). However, if the issue is one of law, our review is *de novo*. *Marconi*, 225 Ill. 2d at 532.

¶ 18    Here, the first issue is whether section 4-114(a)(2)(i) (40 ILCS 5/4-114(a)(2)(i) (West 2016)) or section 4-114(g) (*id.* § 4-114(g)) applies to Davi's application for pension benefits. Section 4-114(a)(2) states:

> "If a firefighter *** dies *** during retirement after 20 years service *** a pension shall be paid to his or her survivors, based on the monthly salary attached to the firefighter's rank on the last day of service in the fire department, as follows:
>
> ***
>
> (2) Beginning July 1, 2004, *** the total monthly pension payable *** to the surviving spouse of a firefighter who died (i) while receiving a retirement pension, *** shall be no less than 100% of the monthly retirement pension earned by the deceased firefighter at the time of death ***." *Id.* § 4-114(a)(2)(i).

¶ 19    Section 4-114(g) states:

7

"If a judgment or dissolution of marriage between a firefighter and spouse is judicially set aside subsequent to the firefighter's death, the surviving spouse is eligible for the pension provided in paragraph (a) only if the judicial proceedings are filed within 2 years after the date of the dissolution of marriage and within one year after the firefighter's death and the board is made a party to the proceedings. In such case the pension shall be payable only from the date of the court's order setting aside the judgment of dissolution of marriage." *Id.* § 4-114(g).

¶ 20 When construing a statute, the cardinal rule, "to which all other rules and canons are subordinate, is to ascertain and give effect to the true intent of the legislature." *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20. "[T]he best evidence of legislative intent is the language used in the statute itself." *Id.* ¶ 21. This is accomplished by giving the language "its plain, ordinary and popularly understood meaning." *Id.* "Courts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Id.*

¶ 21 Here, while both sections use the words "surviving spouse" the difference between the sections is whether the surviving spouse classification was borne out by a continuous marriage or by a judicial proceeding vacating a previously issued judgment of dissolution of marriage. The relevant time frame to determine the status of the parties is at the time of the firefighter's death. See *Field v. Board of Trustees*, 190 Ill. App. 3d 730, 732 (1989) (a survivor's right to pension benefits vests upon the death of the firefighter). At the time of Gary's death, Davi and Gary's marriage was dissolved. Therefore, section 4-114(g) is the applicable pension provision to determine Davi's entitlement to pension benefits.

8

¶ 22     Davi first argues that the statutory language "judgment of dissolution" applies only when all issues in the dissolution have been addressed and appeals, if taken, are complete or the time to appeal has expired. We disagree. Such interpretation departs from the plain statutory language that places no limits on the judgment of dissolution. We will not depart from the plain language to incorporate a limitation not expressed in the statute (*Dew-Becker v. Wu*, 2020 IL 124472, ¶ 14) and decline to adopt Davi's interpretation of this language.

¶ 23     Davi also argues that the language "set aside" does not include the reversal of an erroneous order of dissolution. We disagree. When a court vacates a previous decision it "sets aside a judgment." *People v. Shinaul*, 2017 IL 120162, ¶ 14. This court vacated the circuit court's judgment of dissolution on May 29, 2019, which was subsequent to Gary's death. As such, this court's *Claxton* decision meets the section 4-114(g) statutory requirement of a judicially set-aside judgment of dissolution.

¶ 24     Once applicability is determined, section 4-114(g) provides for an award of pension benefits if three requirements are met: (1) the judicial proceedings are filed within two years after the date of the dissolution of marriage, (2) the judicial proceedings are filed within one year of the firefighter's death, and (3) the board is made a party to the proceedings. 40 ILCS 5/4-114(g) (West 2016). Davi contests the term "judicial proceedings" and claims the language does not incorporate the continuation of an existing divorce.

¶ 25     " 'When the statute contains undefined terms, it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of those terms.' " *Barrall v. Board of Trustees of John A. Logan Community College*, 2020 IL 125535, ¶ 18 (quoting *People v. McChriston*, 2014 IL 115310, ¶ 15). The term "judicial proceeding" is defined by Black's Law Dictionary as "[a]ny court proceeding." Black's Law Dictionary 1222 (7th ed. 1999). Such

9

definition does not limit the phrase to a new action as contended by Davi. The Restatement (Second) of Torts also supports the conclusion that proceedings here are encompassed within the term "judicial proceeding," as it states a "judicial proceeding" "includes all pleadings and affidavits necessary to set the judicial machinery in motion." Restatement (Second) of Torts § 586 cmt. a (1977) (applying the term to attorney privilege and publication of defamatory matter). Accordingly, Davi's motion to vacate the judgment of dissolution is a "judicial proceeding" as contemplated by section 4-114(g).

¶ 26 Davi's motion was filed 26 days after the judgment of dissolution was issued and 3 days after Gary's death. As such, Davi's motion to vacate fulfills the statutory requirement of filing the pleading within two years of the date of the dissolution and within one year of Gary's death. Therefore, only the third requirement, *i.e.*, whether the Board was made a party to the proceedings, is left to address.

¶ 27 Here, there is no dispute the Board was not a party to the proceedings when Davi's motion to vacate was filed or at any time during the pendency of Davi's appeal from the circuit court's denial of the motion to vacate. Instead, both parties contend the other party had the burden to make the Board a party. Davi argues the language is ambiguous, and any ambiguity in the statutory language must be resolved in her favor as a pensioner. The Board argues the burden was on the petitioner based on the other two statutory requirements as well as public policy reasons.

¶ 28 While there is no dispute of the favorable weight accorded a pensioner when the legislative intent is unclear (see *Prazen v. Shoop*, 2013 IL 115035, ¶ 39), we do not find the language ambiguous or unclear. The statute only requires that "the board is made a party to the proceedings." 40 ILCS 5/4-114(g) (West 2016). This language does not place the burden of joining the Board on any particular party. Accordingly, the language allows either party to effectuate such action. The

10

language allows the Board to intervene in the judicial proceedings if it so desires. See *In re Marriage of Hannon*, 207 Ill. App. 3d 329, 331 (1991); see also 735 ILCS 5/2-408 (West 2016). However, this state has long held that subjects who are not parties to a proceeding have no obligation to enter an appearance in said proceeding. See *Knopf v. Chicago Real Estate Board*, 173 Ill. 196, 200-01 (1898). As such, the language also allows a petitioner to move the court to issue summons to the Board, in such instances where intervention does not occur, to ensure the third statutory requirement is met.

¶ 29 As noted above, neither action occurred, and such was the basis of the Board's denial of benefits. However, Davi contends the Board waived its right to argue that the statutory requirements were not met by failing to intervene in the proceedings, as such conduct is consistent with "implied waiver." "Waiver is defined as the intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104 (1991). The party claiming waiver has the burden of proving that the party knew of its rights and providing evidence supporting its claim that the party evidenced an intention to waive such rights. *Id.* at 105.

¶ 30 In support, Davi contends the Board was "fully aware of the ongoing appeal for almost two years and yet did nothing to be heard in that appeal." She relies on the November 15, 2017, correspondence in which Davi's counsel advised the Board that "the entire dissolution matter, including the Judgment, is currently under appeal" as well as the proposed settlement between Davi and Gary's estate and asked it if was necessary "to issue a third-party claim." Davi argues that a finding of "implied waiver" is appropriate because the Board "sat on its hands" throughout the prior appeal, despite receiving notice of the pending appeal. Davi also contends that the Board's knowledge of the proceedings, and failure to intervene, was a waiver of right to rely on the statute

11

after it failed to respond to the question of whether it was necessary to issue a third-party claim to the Board. We disagree.

¶ 31 "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* " 'An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it.' " *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974)).

¶ 32 Section 4-114(g) provides no time limitation for making "the board *** a party to the proceedings." 40 ILCS 5/4-114(g) (West 2016). As such, we rely on the Code of Civil Procedure, which states:

"At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2016).

¶ 33 Such limitation "before final judgment" is consistent with the well-established principle limiting arguments on appeal to those presented to the court below. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985) ("It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal." (citing *Board of Education of Township High School District No. 211 v. Kusper*, 92 Ill. 2d 333, 343 (1982), and

12

*Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 550 (1983)). Therefore, in order for Davi to "sustain the claim for which it was intended," whether by intervention by the Board, or on motion to the court to issue summons, the Board's status as a party required perfection prior to the circuit court's issuance of the final order allowing Davi to appeal to this court.

¶ 34 Here, it is undisputed that Davi's counsel did not advise the Board of Davi's motion to vacate the judgment of dissolution until November 15, 2017, which was over six months after the circuit court issued its ruling on her motion to vacate. As such, Davi's contention that the Board "sat on its hands" for two years is simply unsustainable because without first being made a party before the circuit court, and presenting any argument to that tribunal, the Board would have no argument to present on appeal. Therefore, Davi's claim of waiver, whether intentional or implied, has no substance and must fail.

¶ 35 Davi also contends that by applying section 4-114(g) to Davi's divorce proceeding raises fundamental due process concerns, infringes on section 5 of article 13 of the Illinois Constitution (the pension protection clause), and encroaches on Davi's marital and dissolution rights under Illinois and federal law. The argument is premised on the final sentence of section 4-114(g) which provides for the payment of benefits "from the date of the court's order setting aside the judgment of dissolution of marriage." Davi contends this language "unconstitutionally penalizes Davi (and any surviving spouse like her) by taking away pension benefits to which she was entitled solely because of a circuit court's erroneous decision, and therefore violates her due process rights."

¶ 36 However, as noted above, a survivor's right to pension benefits vests upon the death of the firefighter. See *Field*, 190 Ill. App. 3d at 732. Here, at the time of Gary's death, Davi had no vested right in pension benefits because she was not Gary's spouse. A former spouse, having had the marital relationship severed by dissolution, is not a surviving spouse. *In re Marriage of Hannon*,

207 Ill. App. 3d at 333 (citing *In re Estate of Morrissey*, 38 Ill. App. 3d 981, 983 (1976)). Following the severance, pursuant to the pension code, Davi only becomes a surviving spouse once the dissolution is set aside, and therefore, the pension benefits, if any, vest at that time. Prior to that occurrence, Davi's due process rights cannot be violated by "taking away vested pension benefits," because she was not entitled to pension benefits at any time prior to that action.

¶ 37    The pension protection clause of the Illinois Constitution states that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. However, "the pension protection clause does not transform a nonvested right to retirement benefits into one that is vested." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 59.

¶ 38    Here, Davi had no "membership" in the firefighter's pension plan at the time of Gary's death, as she was not married to Gary at the time of his death. As such, her only avenue for reinstatement of membership was if she followed the statutory directives found in section 4-114(g). Davi's failure to adhere to those requirements eliminates reinstatement of her membership. As such, her claims under the pension protection clause have no merit.

¶ 39    Davi also claims that the language in section 4-114(g) encroaches on Davi's marital and dissolution rights under Illinois and federal law. However, no such law is presented, and the argument merely contends that it "would then appear to require circuit courts to make the Pension Board a party in every divorce proceeding after a bifurcated judgment of dissolution was entered over objection if there was any concern that the firefighter might pass away during the pendency of the divorce proceedings." We disagree. Under the statutory language, the Board is only required to be made a party if the former spouse instigates proceedings to overturn the dissolution of

14

marriage subsequent to the firefighter's death, which is further contingent on the timing of the filing.

¶ 40    Nor do we find, based on the record herein, that inclusion of the Board in such proceeding is unwarranted. The Board is charged with the control and management of the pension fund (see 40 ILCS 5/4-123 (West 2016)), which includes the proper payment of pension funds under section 4-125 of the Pension Code (*id.* § 4-125). Here, the record reveals that Davi and Gary's estate attempted to circumvent the Pension Code statutory requirements by executing a settlement agreement in which they agreed Davi would be classified as a "surviving spouse" and the estate would receive payments from Davi "within two months" of Davi's receipt of pension benefits. Thereafter, Gary's estate dismissed its cross-appeal in the prior proceedings and took the opposite position on appeal, *i.e.*, the estate no longer contested Davi's request to set aside the judgment of dissolution. These actions are, at best, a concerning coincidence and reveal the sagacity of the statutory language requiring the Board be made a party to any proceeding in which the former spouse moves to vacate a dissolution of judgment following the death of the firefighter.

¶ 41    Finally, we address the "necessary party" issue that arose during oral argument. Neither party to this appeal claimed the Board was a "necessary party" to the proceeding. A necessary party has been defined as "one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 144 Ill. App. 3d 943, 946 (1986). "[T]o be a necessary party, the individual or entity involved must have a present substantial interest, as opposed to a mere expectancy or future contingency [citation], in the controverted matter such that this legal entanglement cannot be resolved without either (1) affecting that interest or (2) leaving the interest of those who are before the court in an embarrassing or inequitable position." (Internal quotation marks omitted.) *Sullivan*

15

*v. Merchants Property Insurance Co. of Indiana*, 68 Ill. App. 3d 260, 262 (1979). A third consideration is whether the party's presence is required for a complete determination of the controversy. *Lain v. John Hancock Mutual Life Insurance Co.*, 79 Ill. App. 3d 264, 268-69 (1979).

¶ 42    "It has long been the rule that an order entered without jurisdiction of indispensable parties is null and void." *People ex rel. Meyer v. Gerner*, 35 Ill. 2d 33, 38 (1966). "The failure to join a necessary party may be raised at any time: by the parties or by the trial court or by the appellate court *sua sponte*." *Certain Underwriters at Lloyd's London v. Burlington Insurance Co.*, 2015 IL App (1st) 141408, ¶ 15. While it is possible some argument could be raised that the Board was a necessary party in the prior proceedings, that action is not before this court.

¶ 43    Our jurisdiction is limited to the issues raised in the Board proceeding and stems from the Board's appeal following the circuit court's review of those issues, pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017). Our authority is governed by article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), which provides this court with original jurisdiction when necessary to complete determination of any case on review but provides no jurisdiction to address a proceeding that is not before the court and was final over three years ago. As such, we lack jurisdiction to determine the propriety or necessity of the parties in the prior case and limit our decision to the facts of the case on appeal. Therefore, we vacate the circuit court's order reversing the Board's order and reinstate the Board's order denying pension benefits.

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, we vacate the trial court's order and affirm the Board's order denying pension benefits.


¶ 46    Circuit court judgment vacated; Board decision affirmed.

16

*Board of Trustees of the Alton Firefighters' Pension Fund*, 2023 IL App (5th) 220200

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 20-MR-621; the Hon. Ronald J. Foster, Judge, presiding. |
| **Attorneys for Appellant:** | Joseph Weishampel, of Asher, Gittler & D'Alba, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Gary A. Meadows, HeplerBroom LLC, of Edwardsville, for appellee. |